AO 72A
(Rev. 8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| BETTYE JEAN LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: CV507-104 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold, Jr. ("ALJ" or "ALJ Gold"), denying her claim for Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff filed for Disability Insurance Benefits on July 26, 2004. Plaintiff protectively applied for Supplemental Security Income ("SSI") payments on July 16, 2004. (Tr. at 12). Plaintiff alleges that she became disabled on June 15, 2004, due to arthritis, diabetes, hypertension, difficulty gripping, extreme shoulder pain, and weakness. (Tr. at 13). After her claim was denied initially, and on reconsideration, Plaintiff filed a timely request for a hearing. On August 7, 2006, ALJ Gold held a video teleconferencing hearing. Plaintiff appeared and testified in Waycross, Georgia, and the ALJ presided over the hearing in Savannah, Georgia. (Tr. at 12). Dennis Patrick

Conroy, a vocational expert, also testified at the hearing. (Tr. at 281). ALJ Gold found that Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). (Tr. at 18). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 4-6).

Plaintiff, born on February 21, 1946, was sixty (60) years old when ALJ Gold issued his decision. (Tr. at 266). She has a GED. (Tr. at 267). She has past relevant work experience as a driver, an examination proctor, a census clerk, a word processing supervisor, and as a transcription machine operator. (Tr. at 12).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir.

2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F. 3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed the sequential process to determine that, after the alleged disability onset date of June 15, 2004, Plaintiff has not engaged in substantial gainful employment. At Step Two, the ALJ determined that Plaintiff has the severe impairments of multiple arthralgias and diabetic peripheral neuropathy. (Tr. at 13). However, the ALJ also determined, at Step Three, that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 14). The ALJ found that Plaintiff has the residual functional capacity to perform a wide range of medium work. At the Fourth Step, the ALJ concluded that Plaintiff could not perform any of her past relevant work. (Tr. at 15). The ALJ found, at Step Five, that Plaintiff was not disabled because she retained the ability to perform other jobs that exist in significant numbers in the national economy. (Tr. at 16).

## ISSUES PRESENTED

The issues presented in this review are whether:

I.  there is substantial evidence supporting ALJ Gold's decision to discount the treating physician's opinion; and

II. ALJ Gold erred by refusing to order additional diagnostic procedures requested by Plaintiff's attorney.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the

appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Substantial evidence supports the ALJ's decision to discount the treating physician's medical opinion.**

Plaintiff contends that the ALJ did not give a valid reason for discounting the opinion of Dr. Earl Martin, her treating physician. (Doc. No. 20, p. 8). Plaintiff notes that ALJ Gold cited the opinion of Dr. Stanley Wallace, a consultative examiner, in support of his decision to discount Dr. Martin's opinion. (Id. at 6). Plaintiff asserts that Dr. Wallace never completed a medical source statement and the opinion regarding her residual functional capacity used by the ALJ was that of a non-examining state agency reviewing physician. Plaintiff further asserts that the fact that she stopped taking her medication in 2004 because she could not afford it does not provide substantial evidence to discount the findings of the treating physician. (Id. at 7). Plaintiff contends that the only medical evidence identified by the ALJ that she could return to medium work was the opinion of a non-examining physician. Plaintiff asserts that the Eleventh Circuit has long held that the opinion of a non-examining physician can not constitute substantial evidence to deny a claimant. (Id. at 8) (citing Swindle v. Sullivan, 914, F. 2d 222 (11th Cir. 1990)). Plaintiff notes that Dr. Martin opined that she would not be able to perform work in his residual functional capacity evaluation. Plaintiff contends that the ALJ's rejection of Dr. Martin's opinion is not supported by substantial evidence. (Id. at 9).

Defendant asserts that substantial evidence supports the ALJ's decision to discount the treating physician's opinion. (Doc. No. 23, p.4). Defendant contends that Plaintiff's treatment notes and records, Dr. Wallace's report, and the assessments by

the non-examining consultative physicians provide substantial support for ALJ Gold's decision to discount Dr. Martin's opinion. (Id. at 7). Defendant asserts that the ALJ made an appropriate determination of the probative weight assigned to the various opinions and medical evidence. (Id. at 8).

It is well-established that the opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241. "The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." Edwards v. Sullivan, 937 F. 2d 580, 583 (11th Cir. 1991). When the ALJ rejects the opinion of the treating physician, he must specify that he is doing so and must articulate a reason for not giving the opinion weight. MacGregor v. Bowen, 786 F. 2d 1050, 1053 (11th Cir. 1986). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz v. Bowen, 825 F. 2d 278, 279 (11th Cir. 1987). Additionally, the "ultimate conclusion" that a plaintiff "is disabled is an opinion on an issue reserved for the Commissioner and, as such, [a treating physician's opinion] is not entitled to controlling weight." Walker v. Barnhart, 158 Fed. Appx. 534, 535 (5th Cir. 2005). "A statement by a medical source" that a plaintiff is "'disabled' or 'unable to work' does not mean" the Commissioner "will determine that [a plaintiff is] disabled." 20 C.F.R. § 404.1527(e)(1).

ALJ Gold determined that Plaintiff experiences the severe impairments of multiple arthralgias and diabetic peripheral neuropathy. (Tr. at 13). ALJ Gold further determined that the impairments did not meet or medically equal, either singly, or in combination, one of the listed impairments. The ALJ noted that Plaintiff was briefly followed for hyperglycemia and arthritic pain of the hips and hands at the Blackshear Medical Clinic. The ALJ observed that it is unclear if Plaintiff adhered to the prescribed medications to control her symptoms. The ALJ further observed that x-rays of Plaintiff's hips and hands taken by Dr. Wallace were within normal limits. However, Dr. Wallace detected diminished strength in Plaintiff's hands and diagnosed her with diabetes, hypertension, and multiple arthralgias. ALJ Gold remarked that Dr. Wallace opined that Plaintiff might be restricted from the performance of heavy work. (Tr. at 14).

The ALJ noted that a state agency medical expert concluded that Plaintiff was able to perform medium work, which requires no more than occasional handling; climbing of ladders, ropes, and scaffolds; and which does not require concentrated exposure to extreme heat, vibration, or hazards. The ALJ further noted that a second state agency physician concurred with these conclusions. ALJ Gold observed that the most recent evidence of medical treatment shows that Plaintiff was diagnosed with vaginal atrophy during the course of a physical examination in May 2006 and that she re-instituted treatment for diabetes and hypertension at the McKinney Community Health Center secondary to the onset of chronic lower extremity pain in May 2005. The ALJ remarked that although the McKinney Center records are brief, they support a finding that Plaintiff's conditions are well-controlled through compliance with the prescribed regimens of medication. (Tr. at 14).

ALJ Gold observed that Dr. Martin opined that Plaintiff retains the residual functional capacity to lift twenty pounds, both occasionally and frequently, and to stand and walk for approximately two hours per eight hour time frame. Dr. Martin further opined that Plaintiff's ability to sit is unlimited and that she experiences limited abilities to finger, feel, push, and pull due to hand numbness. The ALJ noted that Dr. Martin remarked that Plaintiff is precluded from concentrated exposure to hazards and she is limited to occasional twisting, stooping, crouching, and climbing stairs and ladders. The ALJ discounted Dr. Martin's assessment, opining that the physical and physiological findings of record do not support such limited physical capacities. The ALJ observed that Plaintiff's treatment notes do not indicate such restrictions from her diabetes or arthralgias. ALJ Gold opined that without more specific treatment notes and better diagnostics to support Dr. Martin's physical capacities evaluation, Dr. Wallace's assessment was more accurate. (Tr. at 15).

The ALJ reviewed and considered the full record and found that Plaintiff retains the residual functional capacity to perform a wide range of medium work. The ALJ specifically found that Plaintiff's capacity for medium work is limited by an inability to climb ladders, ropes, or scaffolding for more than two and one-half hours per eight hour time frame and that she is precluded from the performance of gross handling activities with her dominant right hand for more than five and one-half hours per work day. The ALJ further found that Plaintiff is to avoid concentrated exposure to extreme heat, vibration, and hazardous work environments. ALJ Gold noted that the residual functional capacity assigned to Plaintiff is substantially less work-preclusive than what is alleged by her, but found that her allegations are not supported by the objective medical

evidence in the record. The ALJ further found that Plaintiff's allegations are not entirely credible. (Tr. at 15).

ALJ Gold found that Plaintiff is unable to return to any of her past relevant work. (Tr. at 15). ALJ Gold noted that the vocational expert testified at the hearing that Plaintiff has the following transferable skills: the ability to operate office machinery, deal with people, plan and direct the activities of people, and the ability to attain precise limits. ALJ Gold observed that the vocational expert further testified that a hypothetical worker with the same education, past relevant work experience, age, and residual functional capacity as Plaintiff could be employed as a light, semi-skilled case aide; a light, semi-skilled management aide; or as a light, semi-skilled information clerk. The ALJ found that Plaintiff was not disabled because the evidence supports a finding that she can perform jobs that exist in significant numbers in the national economy at the light exertional level. (Tr. at 16).

ALJ Gold had "good cause" not to provide substantial weight to Dr. Martin's opinion that Plaintiff was unable to work. See Edwards, 937 F. 2d at 583. Additionally, ALJ Gold stated with particularity the reasons he did not give Dr. Martin's conclusions controlling weight. See Sharfarz, 825 F. 2d at 279. Furthermore, the ALJ noted that neither Dr. Martin's treatment records, nor the physical and physiological findings of record, support Dr. Martin's assessment of Plaintiff's residual functional capacity. (Tr. at 15). The ALJ opined that without more specific treatment notes or better diagnostics, Dr. Wallace's assessment was more accurate than Dr. Martin's. (Tr. at 15). ALJ Gold observed that Plaintiff's allegations that she could no longer work were not supported by the objective medical evidence and were not entirely credible. (Tr. at 15). ALJ Gold

noted that the vocational expert testified that Plaintiff retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (Tr. at 16). Plaintiff's reliance on Swindle is misplaced, as that case stands for the proposition that the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. 914 F. 2d at 226. Here, the opinions of the non-examining physicians were not taken alone because there was other substantial evidence supporting them. Accordingly, ALJ Gold's decision to discredit Dr. Martin's opinion is supported by substantial evidence and is based on appropriate legal standards. See Cornelius, 936 F. 3d at 1145.

II. **The ALJ did not err by denying Plaintiff's request for additional diagnostic procedures.**

Plaintiff contends that ALJ Gold erred by refusing to order a neurological evaluation, including EMG and nerve conduction studies, as she and Dr. Martin requested. Plaintiff notes that Dr. Martin recommended that she undergo EMG and nerve conduction studies to quantify the degree of nerve damage to her hands. (Doc. No. 20, pp. 7-8). Defendant contends that the decision regarding the additional diagnostic procedures was within the discretion of the ALJ and that his determination was rendered consistent with the governing regulations. Defendant asserts that Plaintiff did not object at the hearing to the ALJ's determination or articulate any cogent grounds for scheduling such diagnostic procedures. (Doc. No. 23, p. 9).

The decision to request consultative examinations is made on an individual basis when a claimant's medical sources can not, or will not, give the Commissioner sufficient medical evidence regarding the claimant's impairments. 20 C.F.R. § 404.1517. A consultative examination may be purchased when the evidence as a whole, both

AO 72A
(Rev. 8/82)

10

medical and non-medical, is not sufficient to support a decision on a claim. 20 C.F.R. § 404.1519(a). "[T]he ALJ is not required to order a consultative examination unless the record, medical and non-medical, establishes that such an examination is necessary to enable the ALJ to render a decision." Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002) (citations omitted). The Commissioner has broad latitude in ordering a consultative examination in a disability benefit case. Reed v. Massanari, 270 F. 3d 838, 842 (9th Cir. 2001).

ALJ Gold's denial of Plaintiff's request for additional neurological studies was not error. ALJ Gold remarked that he was not allowed to order EMG studies because they are considered invasive. (Tr. at 265). The ALJ considered Plaintiff's request for a nerve conduction study and determined that it was not necessary because the record contained sufficient information for him to render an informed decision. (Tr. at 292). ALJ Gold did find that Dr. Wallace's assessment was more accurate without more specific treatment notes and better diagnostics to support Dr. Martin's physical capacities evaluation. (Tr. at 15). However, this finding does not show that the record was not sufficient for the ALJ to make an informed decision; it merely underscores the ALJ's finding that Dr. Martin's opinion was not supported by the evidence. Thus, Plaintiff's assertions are without merit given the broad latitude accorded the Commissioner in deciding whether to order consultative examinations. See Reed, 270 F. 3d at 842.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 10th day of February, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE